**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| MICHAEL CALKINS, | Case No. 2:16-cv-02628-RFB-VCF |
| Plaintiff, | **ORDER** |
| v. | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC., | |
| Defendants. | |

**I.  INTRODUCTION**

Before this Court comes Defendant Portfolio Recovery Associates, LLC ("PRA")'s Motion for Summary Judgment (ECF No. 34). For the reasons stated below, this motion is granted in part and denied in part.

**II.  PROCEDURAL BACKGROUND**

On November 15, 2016, Plaintiff Michael Calkins ("Plaintiff") filed his Complaint with Jury Demand against PRA and Experian Information Services, Inc. ("Experian"). (ECF No. 1). PRA filed its Answer with Jury Demand on January 20, 2017. (ECF No. 13). On November 6, 2017, PRA filed the instant Motion for Summary Judgment. (ECF No. 34). Plaintiff filed his Response on December 5, 2017. (ECF No. 44). Defendant filed a Reply on January 5, 2018.

**III.  LEGAL STANDARD**

    **A. Motion for Summary Judgment**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (quotation marks omitted).

**IV.     UNDISPUTED FACTS**

The Court finds the following facts to be undisputed. Plaintiff is a resident of Nevada and a "consumer" as defined by the FCRA. PRA is a "furnisher" of credit information under the FCRA. Prior to 2015, Plaintiff was indebted to Capital One Bank, Inc. (the "Account" or the "Debt"). PRA purchased the Account from Capital One Bank, Inc on January 20, 2015. Plaintiff and PRA entered into an agreement to resolve the Debt in full (Account # 5155990048375954) and Plaintiff made payment on May 28, 2015, which was processed by June 7, 2015.

At some point in 2015, Plaintiff retained nonparty Safeguard Credit LLC d/b/a Credit Restoration of Nevada ("CRN") to assist him with disputing what he found to be inaccurate and unverifiable information on his credit reports and other related or similar services. Plaintiff was assisted by Harry Jacobs ("Jacobs"), CEO of CRN. On October 7, 2015, Jacobs assisted Plaintiff with obtaining a copy of his credit report. As to Plaintiff's PRA Account, Experian reported "LEGALLY PAID IN FULL FOR LESS THAN THE FULL BALANCE." However, in the 24-month payment history, Experian reported the code "CO" for April, May, and June 2015. According to Experian, the term CO means "charge-off." However, in a different part of the report, Equifax reported Plaintiff's PRA Account as "SETTLEMENT ACCEPTED ON THIS

ACCOUNT. PAID COLLECTION." Equifax's 24-month payment history section, did not show "CO" for the months of April or May 2015. On December 11, 2015, Jacobs assisted Plaintiff in obtaining a copy of his credit report. The report contained information from Experian, Equifax, and Trans Union. As to PRA, Experian again showed the Payment Status was "LEGALLY PAID IN FULL FOR LESS THAN THE FULL BALANCE." The 24-month payment history again showed the term "CO" for the months of April, May, and June 2015. As to Equifax, the report showed "SETTLEMENT ACCEPTED ON THIS ACCOUNT. PAID COLLECTION." Equifax showed a $0.00 balance for Plaintiff's Account. The 24-month payment history did not show the "CO" code for the months of April and May 2015. Trans Union showed there was a zero balance and did not show a 24-month payment history. That same day, Jacobs helped Plaintiff draft a letter to Experian. The letter stated Plaintiff's Account was settled; but Experian's payment history showed "CO" from April 2015-June 2015. Plaintiff requested PRA confirm charge-off with the original creditor and update the payment history accordingly.

On or about December 24, 2015, Experian notified PRA of Plaintiff's dispute through e-Oscar, the communication platform shared by furnishers and CRAs. Experian sent PRA an Automated Consumer Dispute Verification ("ACDV") form with highlighted fields to indicate Plaintiff's disputes, to which PRA was to respond. PRA sent its response to the ACDV back to Experian on January 8, 2016. PRA included a code "62" on the ACDV response, which indicated that the Account was paid in full. PRA further included a code of "AU" to show that even though the Account was paid in full, it was settled for less than the full balance. PRA also listed the last payment date as May 28, 2015, and indicated June 7, 2015 as the date that the Account's status was updated in PRA's own system as permanently closed due to being settled in full. Experian prepared a consumer report for Plaintiff on January 9, 2016. The report indicated that Experian updated Plaintiff's credit file based upon his dispute of the PRA Account. Under "Status", the report included the following: "Paid in Settlement. This account is scheduled to continue on record until Feb 2020." Under "Comment," the report included the following: "Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act). Under another item called "Comment," the report included the following: "Account paid in full for less than full

balance[.] This item was updated from our processing of your dispute in Jan 2016. The report also indicated that the payment history in December 2015 and January 2016 was "C." Elsewhere in the report, a legend of symbols indicated that "C" on an account meant that an account was "in collection."

On February 8, 2016, Jacobs again helped Plaintiff obtain his credit report. As to Plaintiff's PRA Account, Experian reported the status as "LEGALLY PAID IN FULL FOR LESS THAN THE FULL BALANCE." Yet, the 24-month payment history showed "Negative" for December 2015 and January 2016. The Equifax profile showed "SETTLEMENT ACCEPTED ON THIS ACCOUNT" and the 24-month history did not show "Negative" for any months. PRA sent Plaintiff a letter on April 7, 2016 stating Plaintiff's Account had a $0.00 balance, and that "[i]f our company is reporting this account to the credit reporting agencies, this account will now be reported as settled to each of the three major credit reporting agencies." Additionally, PRA sent Plaintiff a confirmation dated April 8, 2016, stating his recent payment "resolved the account in full."

After Plaintiff again requested his credit report, Experian sent Plaintiff a report dated April 11, 2016, which accurately showed Plaintiff's Account was settled for less than the full balance, but still showed the payment history in December 2015 and January 2016 as "C." On May 3, 2016, Jacobs again helped Plaintiff obtain his credit report. As to Plaintiff's PRA Account, the report showed Experian reported the Payment Status as "LEGALLY PAID IN FULL FOR LESS THAN THE FULL BALANCE," but the payment history still showed "Negative" for December 2015 and for January 2016. The Equifax profile for the Account showed "SETTLEMENT ACCEPTED ON THIS ACCOUNT" and reflected the 24-month payment history as "OK", without a "Negative" indicator for December 2015 and January 2016. On June 9, 2016, Jacobs helped Plaintiff obtain another credit report. It showed Experian reported the Payment Status of the PRA Account as "PAID IN FULL FOR LESS THAN THE FULL BALANCE," but the payment history still showed "Negative" for December 2015 and for January 2016. Equifax's profile showed "SETTLEMENT ACCEPTED ON THIS ACCOUNT," but showed the Payment History as "OK" for December 2015 and no history for January 2016.

On July 8, 2016 Plaintiff's prior counsel wrote a settlement offer to PRA. Counsel discussed the notations on Plaintiff's Experian reports which initially showed "CO" for April, May, and June 2015, and then showed "C" for December 2015 and January 2016.

On November 15, 2016, Plaintiff's new counsel commenced the instant suit. Around December 29, 2016, Plaintiff obtained a copy of his credit report. The report showed Experian was no longer reporting any information about the Plaintiff's PRA Account.

**V.    DISCUSSION**

**A.  Liability Under the Fair Credit Reporting Act**

"Congress enacted the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x, in 1970 'to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009) (citing Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007)). "As an important means to this end, the Act sought to make 'consumer reporting agencies exercise their grave responsibilities [in assembling and evaluating consumers' credit, and disseminating information about consumers' credit] with fairness, impartiality, and a respect for the consumer's right to privacy.'" 15 U.S.C. § 1681(a)(4). Gorman, 584 F.3d at 1153.

"The FCRA expressly creates a private right of action for willful or negligent noncompliance with its requirements. However, § 1681s-2 limits this private right of action to claims arising under subsection (b), the duties triggered upon notice of a dispute from a CRA." Id. at 1154 (citations omitted); see also Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059–60 (9th Cir. 2002) ("That with these words Congress created a private right of action for consumers cannot be doubted. That right is to sue for violation of any requirement "imposed with respect to any consumer.")

15 U.S.C. § 1681s-2(b) provides for the duties of furnishers of information upon notice of a dispute. 15 U.S.C. §§ 1681s-2(b) provides in relevant part:

> (1) In general. After receiving notice pursuant to section 611(a)(2) [15 USCS § 1681i(a)(2)] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall

    (A) conduct an investigation with respect to the disputed information;
    (B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [15 USCS § 1681i(a)(2)];
    (C) report the results of the investigation to the consumer reporting agency;
    (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
    (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
      (i) modify that item of information;
      (ii) delete that item of information; or
      (iii) permanently block the reporting of that item of information.

    A furnisher may be held liable for violation 15 U.S.C. § 1681s-2(b)(1) if it fails to conduct a reasonable investigation after being notified by a CRA of a consumer's dispute. Gorman, 584 F.3d at 1157. The question of whether an investigation was reasonable is typically left to the jury – however, summary judgment of the reasonableness issue is appropriate to grant "when only one conclusion about the conduct's reasonableness is possible." Id. (citation and quotation marks omitted).

    The FCRA provides for actual damages, punitive damages, and attorney's fees for willful violations of its statutory requirements. 15 U.S.C. § 1681n(a). For negligent violations, FCRA provides for actual damages and attorney's fees. 15 U.S.C. § 1681o(a). "The term 'actual damages' has been interpreted to include recovery for emotional distress and humiliation. . . . Moreover, no case has held that a denial of credit is a prerequisite to recovery under the FCRA." Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995) (citations omitted).

    "A plaintiff who alleges a 'bare procedural violation' of the FCRA, 'divorced from any concrete harm,' fails to satisfy Article III's injury-in-fact requirement." Syed v. M-I, LLC, 853 F.3d 492, 499 (9th Cir. 2017), cert. denied, 138 S. Ct. 447, 199 L. Ed. 2d 340 (2017) (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549 (2016)).

### B. PRA's Furnishing of Information to Experian

    PRA contends that summary judgment is warranted because it properly reported Plaintiff's

Account as settled and collected as of June 2015. PRA argues that it did not inaccurately report any information, either as to the April, May, and June 2015 reporting, or the December 2015 and January 2016 reporting. Plaintiff counters that PRA is liable under the FCRA for reporting inaccurate information on the ACDV form which led to Experian continuing to report inaccurate information.

The Court first finds that there is no dispute that PRA provided information to Experian to confirm the following: (1) Plaintiff made his last payment on the PRA account on May 28, 2015 and (2) Plaintiff's Account was settled, for an amount less than the full balance, on June 7, 2015. These facts are undisputed regardless of whether PRA's person most knowledgeable recognized Plaintiff's exact ACDV, number 0235.

Plaintiff argued in his Response brief that PRA violated its duties under 15 U.S.C. § 1681s-2(a)(2); however, there is no private right of action for that statutory subsection. Based upon the allegations in the Complaint and the arguments Plaintiff raised in his brief, the Court construes Plaintiff's FCRA claim as alleging a violation of 15 U.S.C. § 1681s-2(b)(2)(E), as Plaintiff appears only to challenge the continued inaccurate reporting of his Account. The Court finds as a matter of law that PRA's investigation was reasonable, as it is undisputed that PRA conducted an investigation after being notified by Experian of Plaintiff's dispute, and it is further undisputed that PRA's investigation came to the correct conclusion – that Plaintiff's Account was settled and there no longer remained a balance.

There are, however, genuine disputes of fact as to PRA's compliance with 15 U.S.C. § 1681s-2(b)(2)(E). First, it is unclear whether PRA's ACDV response triggered the "C" and "Negative" notations in Plaintiff's 24-month payment history, for the months of December 2015 and January 2016, which appeared on multiple of Plaintiff's credit reports until no earlier than December 29, 2016. Construing the facts in the light most favorable to Plaintiff, including the testimony of PRA's person most knowledgeable, a reasonable juror could find that PRA's responses to the ACDV prompted Experian to use these notations in its reporting of Plaintiff's Account status, particularly if there was a pattern or history of Experian incorporating PRA's updates to similar disputes, in a similar fashion.

It is further unclear from the record whether the "C" and "Negative" notations are inaccurate information under the FCRA. While Plaintiff argues that these notations should not have appeared on his credit report for the months of December 2015 and January 2016, it is possible that these codes accurately reflected the status of his account with PRA during that time. On the other hand, a reasonable juror could find that these notations were either inaccurate or misleading. "[A]n item on a credit report can be incomplete or inaccurate . . . because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." Drew v. Equifax Info. Servs., LLC, 690 F.3d 1100, 1108 (9th Cir. 2012) (alterations in original) (citation and quotation marks omitted). The Court cannot resolve at this stage the question of whether these notations were inaccurate, and leaves the question for the jury.

Finally, there is a genuine dispute as to whether Plaintiff was harmed by the "C" and "Negative" notations appearing on his credit reports. It is undisputed that, following Plaintiff raising a dispute with Experian after settling his account, within Plaintiff's 24-month payment history, only the months of December 2015 and January 2016 were reported as "C" or "Negative." The record is unclear as to whether their notations on their face were sufficient to indicate to a creditor that Plaintiff's credit was damaged, such that Plaintiff would automatically be denied credit or otherwise experience harm. While the denial of credit is not required for a plaintiff to establish a violation of the FCRA, evidence of some harm is necessary. Here, Plaintiff has alleged harm, but it is unclear whether these notations on his credit report were actually harmful to him in anyway.

For these reasons, the Court denies summary judgment on Plaintiff's FCRA claim. However, the Court finds it appropriate to grant summary judgment on the Nevada Deceptive Trade Practices Act claim. Plaintiff offered no argument on the claim, and the Court has no means of discerning which subsections of the statute are at issue.

**VI. CONCLUSION**

Accordingly,

1     **IT IS ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 34) is GRANTED IN PART and DENIED IN PART.

    **IT IS FURTHER ORDERED** that the parties file a Joint Pretrial Order by October 8, 2018.

DATED: September 6, 2018.

**RICHARD F. BOULWARE, II**
**UNITED STATES DI8STRICT JUDGE**